410 P.2d 475

**In re Cindy COOPER and Tracy Caine, Marvin Lentini and Judith D. Lentini, Petitioners and Appellants.**

**No. 10352.**

Supreme Court of Utah.

Jan. 24, 1966.

1. See Rule 72(a), Utah Rules of Civil Procedure, Vol. 9, pp. 776 et seq. and annotations thereto.

Christenson, Paulson & Taylor, Cullen Y. Christenson, Provo, for appellants.

Phil L. Hansen, Atty. Gen., State of Utah, Ronald N. Boyce, Asst. Atty. Gen., State of Utah, for the State of Utah in the interest of the children.

CROCKETT, Justice.

Marvin Lentini and his wife, Judith D. Lentini, filed a petition with the Juvenile Court of Utah County to obtain custody of two children, Cindy Cooper, then age 6, and Tracy Caine, then age 4, for the stated purpose of ultimate adoption. After a hearing the court denied their petition and they appeal.

Pursuant to prior proceedings before that court in the interest of those children, they

had been permanently taken from the custody of their natural parents and placed with the Utah County Department of Public Welfare, with the view to eventual placement and adoption.[1]

Mrs. Lentini is a sister of the mother of these children. When the Juvenile Court deprived the mother of their custody, the Lentinis filed this petition, together with an affidavit of the mother indicating her preference that petitioners be awarded the children. It is their contention that this, combined with the fact of their relationship to the children, supported by the evidence of their fitness as parents and the suitability of their home compel a finding in their favor.

In fairness to the Lentinis it should be stated that the concern they have shown for the welfare of these children is entirely commendable. Furthermore, the evidence shows them to be fine people, with children of their own, who have a good home and an income adequate to support the children. We also observe that we have no disagreement with the basic principles which they advocate in behalf of their contention: that in custody matters, all things else being equal, near relatives should generally be given preference over nonrelatives; and that considerable weight should be given to the preference of the natural parents.[2] Nevertheless, while these principles should be given due consideration in resolving such problems, they cannot be made absolutely controlling over the practical realities of life which the court must weigh in serving the paramount objective which must override all others: the welfare of the children.[3] In order to carry out its responsibility of safeguarding the interest of children, and incidentally of society, where the home has failed to do so, the Juvenile Court is of necessity endowed with broad discretion as to what will best accomplish that purpose.[4]

The evidence concerning the heretofore erratic lives of these children, and particularly the testimony of the social workers who know about them, justifies apprehensions as to the advisability of placing them with the Lentinis. It is indicated that due to the trauma of vagarious and unsettled lives they have undergone serious emotional

1. For a review of the statutory grant of power and the scope of authority of the Juvenile Court in such matters, see Devereaux v. Brown, 2 Utah 2d 334, 273 P. 2d 185; State in interest of K——— B———, 7 Utah 2d 398, 326 P.2d 395.
2. Sec. 55-10-30(4) U.C.A.1953 states: "That the child be placed under such guardianship or custody as may be warranted by the evidence and for the best interest of the child; provided, however, that in the selection of a guardian the court shall give due consideration to the preference of parents."
3. See Walton v. Coffman, 110 Utah 1, 169 P.2d 97.
4. For a statement in regard to the interest of society in the care, nurture, education and welfare of children see State in interest of K ——— B——— footnote 1 above.

disturbances; and have manifest an unnatural jealousy and antagonism toward each other. But now in separate foster home care they are showing marked improvement in their emotional stability and adjustment. If the children were with the Lentinis the mother would always know where they were. Although she now indicates a willingness to give the children to her sister, the erratic history indicates a strong likelihood that before long she would be attempting to interfere, as she has done in the past.

From our review of this case, giving proper deference to the prerogatives of the Juvenile Court, we are not persuaded that it abused its discretion in refusing to grant the petition under the conditions which were shown to exist at the time. We think it is appropriate to observe that proceedings in regard to the custody of children are equitable,[5] and that they are ambulatory in that conditions may change from time to time. Accordingly, these children and the question as to their custody are subject to such further proceedings and orders as the Juvenile Court may think is in their interest and welfare.

Affirmed. No costs awarded.

McDONOUGH, WADE, and CALLISTER, JJ., concur.

HENRIOD, Chief Justice: (concurring in the result).

I concur in the result, but add that I think the Lentinis had no standing in court procedurally, jurisdictionally or statutorily.

---

5. See Walton v. Coffman, footnote 3, supra.