**P. EDWARD A., By and Through his next friend, C. Dane NOLAN, Plaintiff,**

v.

**Jean WILLIAMS, et al., Social Workers, Judge Sharon McCully, Juvenile Court Judge, Michael Christensen, Deputy County Atty., Juvenile Div., and Does I–X, Defendants.**

Civ. A. No. 88–C–0165A.

United States District Court, D. Utah, C.D.

Oct. 7, 1988.

Brian Barnard and C. Dane Nolan, Salt Lake City, Utah, for plaintiff.

Linda Luinstra and Stuart Hinckley, Asst. Attys. Gen. of Utah, Salt Lake City, Utah, for Williams, Rees and Worsley.

Carlie Christensen, Salt Lake City, Utah, for McCully.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

ALDON J. ANDERSON, Senior District Judge.

### I.  INTRODUCTION

The plaintiff has brought an action seeking declaratory and injunctive relief against Honorable Sharon McCully of the Utah State Juvenile Court, a number of state social workers, a Salt Lake County Attorney, and the Utah Department of Social Services, Family Services Division. Plaintiff alleges that he is being deprived of his constitutional rights without due process of law because defendants are severely limiting and restricting his visitation with his sister, C. Anne A. (hereafter "Anne"), who is placed in foster care.[1] Plaintiff also claims that a pending state action seeking to permanently terminate the parental rights of L. Sue A. and R. Kyle A. with respect to Anne should be enjoined from proceeding because it would deprive him of liberty and potential property interests inherent in the sibling relationship with his sister.

In January 1986, allegations were made that Anne had been abused or neglected while in the custody of her parents. Proceedings were commenced in state court and Anne was placed in the temporary custody of the Utah State Division of Family Services. On September 9, 1987, the Division of Family Services filed a petition to terminate the parental rights of Anne's parents with respect to her.

---

1. Plaintiff is living with his maternal grandparents and is not in foster care.

Plaintiff argues that the state social workers have interfered with the rights of the plaintiff by not providing for adequate visitation between the siblings, as well as restricting telephone conversations. Plaintiff also contends that the pending Juvenile Court petition to terminate parental rights will affect him by terminating any and all legal rights and interests between him and his sister. These alleged interests include (1) a liberty interest inherent in the sibling relationship between plaintiff and Anne; (2) a potential property interest in that he may inherit from her under state law; and (3) a potential property interest in that state law could obligate Anne to support her brother in the event he became indigent.[2]

Defendants Rees and Williams have moved to dismiss this action on two grounds. First, defendants claim that the plaintiff's alleged injury is remote, speculative and not ripe for adjudication because plaintiff's alleged interests are not true interests but mere expectancies. Second, defendants argue that the *Younger* doctrine and its progeny require the district court to abstain from hearing plaintiff's case because it would interfere with judicial proceedings pending in state court. Defendants assert that the pending state court proceeding on the termination of the parental rights of Anne's parents is the appropriate forum for plaintiff to assert his constitutional claims since important state interests are involved. Defendants point out that the Utah Supreme Court has on numerous occasions permitted relatives of children under state custody to intervene in custody and visitation proceedings. This intervention would thus provide the plaintiff with a competent, as well as appropriate, forum to address his constitutional claims and entitlement to visitation rights.

In rebuttal, plaintiff argues that the case is ripe for controversy in that his rights as to his sister will be terminated if this case is not heard.[3] He further argues that since he is not a party to the pending juvenile court proceeding and no state statutory provision expressly provides for him to become a party, his action can and should be heard by this court.

As will be shown below, this court is of the opinion that this case involves important state interests appropriate for resolution in the pending state proceeding. Therefore, this court is required to abstain from enjoining the state proceeding and defendants' motion to dismiss will be granted.[4]

## II. DISCUSSION

The modern doctrine of federal abstention from enjoining pending state proceedings began its development in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971). In *Younger*, the Supreme Court held that federal courts cannot enjoin pending state criminal prosecutions except in extraordinary circumstances where irreparable injury would otherwise occur. *Id.* at 46, 91 S.Ct. at 751. The Court articulated several reasons for this abstention: 1) state courts should be permitted to try cases free from federal interference; 2) erosion of the role of the jury should be prevented; 3) the duplication of legal proceedings should be prevented; and 4) comity, i.e. proper respect for state judicial proceedings, should be preserved. *Id.* at 43–44, 91 S.Ct. at 750.

The abstention rule enunciated in *Younger* was subsequently held to apply to certain types of civil proceedings. In *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95

2. Since C. Anne A. is only eleven years old, it is quite unlikely that these "potential property interests" would be realized in the foreseeable future.

3. It should be noted that plaintiff had the opportunity to live with Anne for six weeks during this past summer (summer of 1988) because Ann was placed with her maternal grandparents for a trial placement. In fact, at the hearing of this motion, defendants informed the court that

the trial placement was so successful that arrangements were nearly complete to place Ann in the custody of her grandparents. If Anne was placed with her grandparents, the petition to terminate parental rights would then be dismissed.

4. Since the court finds that it is required to abstain from hearing plaintiff's case, the question of whether plaintiff's claims are ripe for controversy has not been addressed.

S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975) the Court applied abstention to civil proceedings "quasi-criminal" in nature. The case involved the propriety of a federal injunction against the execution of a judgment entered in a pending state court suit brought by the State to enforce a nuisance statute. *Id.* at 595–98, 95 S.Ct. at 1204–05. The court focused upon the need for comity and the fact that the state was a party to the state proceeding. *Id.* at 606–07, 95 S.Ct. at 1209–10. The Court noted that the nuisance statute was itself "more akin to a criminal prosecution than most civil cases," and concluded that a federal injunction would be "an offense to the State's interest ... likely to be every bit as great as it would be were this a criminal proceeding." *Id.* at 604, 95 S.Ct. at 1208. The court reiterated that

> *Younger,* and its civil counterpart which we apply today, do of course allow intervention in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."

*Id.* at 611, 95 S.Ct. at 1212. Nevertheless, the court concluded that to permit the federal proceeding to go forward would have the court "base a rule on the assumption that state judges will not be faithful to their constitutional mandate. This we refuse to do." *Id.*

In *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the High Court expanded the abstention doctrine to enjoin state enforcement of civil contempt proceedings. *Id.* at 330, 97 S.Ct. at 1214. The court stressed the "more vital consideration" of comity mentioned in *Younger* and held that the state interest in vindicating the regular operation of the judicial system through the contempt process was sufficiently important to preclude federal injunctive relief unless one of the *Younger* exceptions applied. *Id.* at 334, 97 S.Ct. at 1216. The court ruled that it was "abun-

dantly clear that appellees had an opportunity to present their federal claims in the state proceedings. No more is required to invoke *Younger* abstention." *Id.* at 337, 97 S.Ct. at 1218.

In *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), *Younger* was applied to prohibit a federal court from enjoining state domestic relations proceedings. *Id.* at 418, 99 S.Ct. at 2374. The three judge district court had enjoined certain state proceedings and found unconstitutional parts of a state statutory scheme which sought to define the rights of parents, children, and the state in suits affecting the parent-child relationship. *Id.* The court cited *Huffman* and reiterated that the *Younger* doctrine is "fully applicable to civil proceedings in which important state interests are involved." *Id.* at 423, 99 S.Ct. at 2377. "As ... in *Huffman,* the State here was a party to the state proceedings, and the temporary removal of a child in a child-abuse context is, like the public nuisance statute involved in *Huffman,* 'in aid of and closely related to criminal statutes.' The existence of these conditions ... determines the applicability of *Younger–Huffman* principles as a bar to institution of a later federal action." *Id.* at 423, 99 S.Ct. at 2377.

The Supreme Court has continued to apply the *Younger* doctrine, most recently in a case involving lawyer disciplinary proceedings. *See Middlesex County Ethics Comm. v. Garden State Bar Assn.,* 457 U.S. 423, 435, 102 S.Ct. 2515, 2522, 73 L.Ed. 2d 116 (1982). The Tenth Circuit has also recognized and adopted the doctrine of federal abstention in civil cases. *See First Nat. Bank and Trust Co. of Wyoming v. Lawing,* 731 F.2d 680, 683 (10th Cir.1984); *Cogswell v. Quinn,* 667 F.Supp. 1422, 1423 (D.Colo.1987).

In addition to the reasons for abstention cited in *Younger,* the Supreme Court has emphasized that state courts are as competent to address constitutional claims as the federal courts. "[T]o restrain a state proceeding that afforded an adequate vehicle for vindicating the federal plaintiff's constitutional rights 'would entail an unseemly

failure to give effect to the principle that state courts have solemn responsibility equally with the federal courts' to safeguard constitutional rights and would 'reflec[t] negatively upon the state court's ability to do so.'" *Trainor v. Hernandez*, 431 U.S. 434, 443, 97 S.Ct. 1911, 1917, 52 L.Ed.2d 486 (1977) *quoting Steffel v. Thompson*, 415 U.S. 452, 460–61, 462, 94 S.Ct. 1209, 1216–17, 39 L.Ed.2d 505 (1974). Thus, the state would not only be prevented from "effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies." *Huffman v. Pursue, Ltd.*, 420 U.S. at 604, 95 S.Ct. at 1208. Furthermore, as the *Moore* court pointed out, "the price exacted in terms of comity would only be outweighed if state courts were not competent to adjudicate federal constitutional claims—a postulate we have repeatedly and emphatically rejected." *Moore v. Sims*, 442 U.S. at 430, 99 S.Ct. at 2380.

▮ Thus, under *Younger* and its progeny, two determinations must be made to decide whether abstention is warranted: (1) do the proceedings implicate important state interests, and (2) is there an adequate opportunity in state court to raise constitutional challenges.

▮ The importance of the state interest can be demonstrated by two means. First, the plaintiff can show that the non-criminal proceedings bear a close relationship to criminal proceedings. *Huffman v. Pursue, Ltd.*, 420 U.S. at 604–05, 95 S.Ct. at 1208–09. Second, he can prove that the proceedings are necessary for the vindication of important state policies or the functioning of the state judicial system. *Trainor v. Hernandez*, 431 U.S. at 444, 97 S.Ct. at 1918; *Juidice v. Vail*, 430 U.S. at 335–36, 97 S.Ct. at 1217–18.

▮ In the instant case, plaintiff's claims are matters which involve family law and the relations between members of the nuclear family. Family law is an area of law traditionally left to the state. *Swayne v. L.D.S. Social Services*, 670 F.Supp. 1537, 1546 (D.Utah 1987). "The importance of the state interests in [domestic relations] matters are borne out by early Supreme Court precedent dealing with the jurisdiction of federal district courts." In *In re Burrus*, 136 U.S. 586, [593], 10 S.Ct. 850, 34 L.Ed. 500 (1890) the court said:

"The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States. As to the right to the control and possession of this child, as it is contested by its father and its grandfather, it is one in regard to which neither the Congress of the United States, nor any authority of the United States has any special jurisdiction."

*Swayne v. L.D.S. Social Services*, 670 F.Supp. at 1546. Abstention as it applied to family law concerns was expressly discussed in *Moore v. Sims:* "Family relations are a traditional area of state concern. We are unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation. Accordingly, federal courts ordinarily should defer to the state courts based upon the state's strong interest in domestic relations matters, the superior expertise of state courts in settling such disputes and the possibility of incompatible state and federal orders." *Id.* 442 U.S. at 435, 99 S.Ct. at 2383. *See Fay v. South Colonie Central School Dist.*, 802 F.2d 21, 31 (2d Cir.1986); *Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983).

The issues sought to be litigated by the plaintiff involve his opportunity for visitation with his sister and the potential termination of his legal status as her brother. Both of these questions are questions to be resolved under family law principles. Moreover, the state is a party to the juvenile court action, which also evidences the importance of the state interest. Thus, important state interests traditionally left to the state are involved which are best left for resolution by the state court.

Second, the plaintiff must have the opportunity to litigate his claim in the state

tribunal. As the Supreme Court said in *Moore v. Sims:* "the pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims." *Id.* 442 U.S. at 430, 99 S.Ct. at 2381. Abstention "naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).[5]

This is the most troubling aspect in abstaining from hearing plaintiff's claims. No Utah court has addressed whether or not a child has the right to contest the proposed termination of parental rights as to another sibling. However, state juvenile courts are endowed with broad discretion to act in the best interests of the child in custody cases. *In re Cooper*, 17 Utah 2d 296, 410 P.2d 475 (1966). Furthermore, Utah courts have been quite progressive in permitting relatives and prospective adoptive parents to intervene in custody and visitation proceedings. *See e.g. State in Interest of Tom*, 556 P.2d 213, 215 (Utah 1976) (maternal aunt and uncle given standing to assert claim to children's custody); *State in Interest of Summers v. Wulffenstein*, 616 P.2d 608, 610 (Utah 1980) (interest of grandmother in custody and welfare of her two grandchildren was a "liberty interest" for purpose of due process analysis); *Wilson v. Family Services Div., Region Two*, 554 P.2d 227, 230 (Utah 1976) (Matter of family relationship is a factor that should be given due and serious consideration in custody proceeding); *State in Interest of A.H. v. Mr. and Mrs. H.*, 716 P.2d 284, 286 (Utah 1986) (Prospective adoptive parents had legally protectible interest to confer standing to petition for restoration of custody).

In addition, other courts have recognized the importance of the sibling relationship

and its continuance notwithstanding adoption or termination of parental rights. *See Matter of Adoption of Anthony*, 113 Misc.2d 26, 448 N.Y.S.2d 377, 381 (Fam.Ct. 1982) (adoption was ordered with direction that adoptive child have continued contact including visitation with siblings); *Matter of Patricia A.W.*, 89 Misc.2d 368, 392 N.Y. S.2d 180, 187 (Fam.Ct.1977) (parental rights terminated but visitation rights preserved between adopted boy and his sisters); *Matter of Wesley L.*, 72 A.D.2d 137, 423 N.Y.S. 2d 482, 485 (1980) (separation of siblings is a factor to be considered in determining what is in the best interest of a child).

In sum, this court feels that plaintiff would be allowed to intervene and be heard in the state court proceeding. In fact, his claims revolve around visitation and custody decisions which require the expertise and jurisdiction of that tribunal. Since the state court is uniquely qualified to correctly fashion an appropriate remedy, if any is necessary, for plaintiff's alleged injuries, this court should abstain from hearing plaintiff's case and grant defendants' Motion to Dismiss.[6]

█ It should be noted that two exceptions exist that could make *Younger* inapplicable to the instant case and permit this court to exercise its jurisdiction. The first exception provides that federal intervention is warranted where the state proceeding is motivated by a desire to harass or is conducted in bad faith. *Moore v. Sims*, 422 U.S. at 424, 99 S.Ct. at 2377. In the case at hand, there is no indication that the pending petition to terminate parental rights is in any way motivated by a desire to harass or was brought in bad faith. On the contrary, the state is seeking only to protect a small child who has been the victim of abuse inflicted by one of her parents.

**5.** It should be noted that *Gibson v. Berryhill* requires that plaintiff be accorded only an *opportunity* to fairly pursue his constitutional claims in ongoing state proceedings. 411 U.S. at 577, 93 S.Ct. at 1697. A party's "failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." *Juidice v. Vail*, 430 U.S. at 337, 97 S.Ct. at 1218.

**6.** This court's decision to abstain is based on the assumption that plaintiff will have an adequate opportunity for review in state court. It should be noted that appropriate circumstances, although unlikely, could warrant the federal court to exercise its jurisdiction.

] The second exception permits federal intervention where the case involves such extraordinary circumstances that the plaintiff will suffer irreparable injury even though the state action was brought in good faith. *Moore v. Sims,* 442 U.S. at 432–33, 99 S.Ct. at 2381–82. The case must be extraordinary in the sense of creating an extraordinarily pressing need for immediate relief. *Id.* at 433, 99 S.Ct. at 2382. Again, there is no indication in this case that a pressing need exists to require immediate relief. The plaintiff has adequate time to intervene in the juvenile proceeding. Furthermore, the state court could order visitation between the plaintiff and his sister as part of the parental determination decree which would resolve several of plaintiff's claims. Therefore, this court finds that there is no extraordinarily pressing need for immediate relief that warrants federal intervention.

## CONCLUSION

Plaintiff's causes of action involve important state interests appropriate for resolution in the pending state proceeding. This court is of the opinion that plaintiff will be permitted to intervene in the juvenile proceedings and have his claims addressed in that tribunal. Consequently, this court abstains from enjoining the state proceeding and dismisses plaintiff's Complaint.